# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| MICHELLE ROBIN KESSLER, | |
| Plaintiff, | |
| v. | Case No. 1:14-CV-152-JVB-SLC |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

## OPINION AND ORDER

Plaintiff Michelle Robin Kessler seeks judicial review of the Defendant's decision to deny her social security disability benefits. Administrative Law Judge Terry Miller issued a decision unfavorable to Plaintiff on April 9, 2013. (R. 26.) That decision became the final decision of the Defendant Commissioner of Social Security when the Social Security Appeals Council denied Plaintiff's request for review.

**A.  Overview of the Case**

Plaintiff was 46 years old on the date of her alleged onset of disability. (R. 24.) She has at least a high school education. (R. 24.) The ALJ found that Plaintiff had not engaged in substantially gainful activity since the alleged onset date of March 15, 2010. (R. 16.) The ALJ found that Plaintiff had the severe impairments of chronic low back pain due to degenerative disc disease, osteopenia, hypothyroidism, migraines, obesity, depression, and posttraumatic stress disorder. (R. 16.) The ALJ also found that Plaintiff suffered from the non-severe impairments of

hiatal hernia, overactive bladder, and left thumb arthritis/trigger thumb; although he found that there were no recent problems with these impairments. (R. 16.) Further, the ALJ concluded that Plaintiff has a residual functional capacity (RFC) to perform "light work" with additional restrictions. These restrictions are: never climbing ladders, ropes, or scaffolds; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; alternating between sitting and standing positions up to every 30 minutes without the change rendering her off task; and avoiding concentrated exposure to loud noise, bright and flashing lights, and hazards such as dangerous moving machinery, unprotected heights, and slippery, uneven, and moving surfaces. The ALJ also found mental limitations for Plaintiff including not being able to understand, remember, or carry out detailed or complex job instructions. This resulted in her being limited to performing simple repetitive tasks on a sustained basis; not being able to perform tasks requiring intense or focused attention for long periods of time; and being limited to only casual, superficial interactions with others, including supervisors, co-workers, and the general public. (R. 18.)

The vocational expert testified that Plaintiff was unable to perform any past relevant work. (R. 24, 72-73.) He also testified that given the claimant's age, education, work experience, and residual functional capacity, Plaintiff would be able to perform representative occupations such as Assembler/Bench Work, Inspector, and General Office Clerk. (R.25.) Relying on the vocational expert's testimony, the ALJ found that there exists a significant number of jobs in the national economy that Plaintiff can perform. (R. 24.) Because of this, the ALJ found that Plaintiff was not disabled. (R. 25.)

**B.**  **Standard of Review**

This Court has the authority to review Social Security Act claim decisions under 42 U.S.C. § 405(g). The Court will uphold an ALJ's decision if it is reached under the correct legal standard and supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This Court will not reconsider facts, re-weigh the evidence, resolve conflicts in the evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). This Court will, however, ensure that the ALJ built an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may access the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

**C.     Disability Standard**

To qualify for disability benefits, the claimant must establish that she suffers from a disability. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The SSA established a five-step inquiry to evaluate whether a claimant qualifies for disability benefits. A successful claimant must show:

> (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy.

*Scheck v. Barnhart*, 357 F.3d 697, 699–700 (7th Cir. 2004).

An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

**D.     Analysis**

In this appeal, Plaintiff challenges her credibility assessment used in steps 2 and 3, the limitations excluded from the ALJ's RFC, and the specificity of the RFC as it relates to availability of work in step 5.

**(1)     *Credibility Assessment***

Plaintiff argues that the ALJ improperly assessed her credibility because she is entitled to substantial credibility due to her strong work history and because the ALJ overemphasized her daily activities, erroneously equating them to work activities.

Plaintiff's work history does not entitle her to an automatic finding of substantial credibility. The Seventh Circuit, like the social security regulations, uses work history as one of many factors to determine credibility, with none being automatically dispositive. *See, e.g., Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (utilizing multiple factors in determining credibility); SSR 96-7p (S.S.A.), 1996 WL 374186, at *5 ("Assessment of the credibility of an individual's statements about pain or other symptoms . . . includes, but is not limited to: . . . prior work record and efforts to work . . . .").

4

Plaintiff only cites out of Circuit cases to support her contention that she is entitled to substantial credibility because of her work history. (Pl.'s Opening Br. 22 – 23.) Further, the Second Circuit cases Plaintiff cites do not necessarily represent the rule in that circuit. Later cases have clarified that, as the social security regulations state, work history is merely one of the factors to be considered when determining credibility. *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998). While the ALJ must consider the entire case record and give specific reasons for his credibility determination, SSR 96-79-p (S.S.A.), 1996 WL 374186, at *4, the ALJ does not need to mention every piece of evidence. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). Moreover, failing to directly mention Plaintiff's work history in the credibility determination does not mean that the ALJ failed to consider it. The ALJ need only "minimally articulate his reasons for crediting or rejecting evidence of disability." *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). The ALJ sufficiently articulated his reasons here through his analysis of the inconsistencies between Plaintiff's claimed symptoms and her daily activities.

Further, the ALJ properly considered Plaintiff's daily activities in determining her credibility. The court in *Bjornson* criticized equating activities of daily living and activities in a full-time job because of the situational differences in those activities such as scheduling flexibility, available aid from others, and the standard at which work must be completed. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). Notably, the court did not prohibit an ALJ from analyzing daily activities when determining credibility. In fact, SSR 96-7p and 20 C.F.R. 416.929(c) specify that an individual's daily activities are among the factors that an adjudicator *must* consider when making a credibility determination. SSR 96-7p (S.S.A.), 1996 WL 364186, at *3 (emphasis added).

Here, the ALJ properly considered Plaintiff's daily activities in the context of determining her credibility. The ALJ acknowledged Plaintiff's claimed symptoms including: back pain, which affects many aspects of her mobility, ability to concentrate, ability to use her hands, and ability to get along with others; use of a cane outdoors; inability to stand longer than it takes to do her dishes, about 15 minutes, and even hurting after that; inability to sit for more than 30 minutes; and difficulty lifting objects from the floor. (R.19.) Additionally, Plaintiff testified that she cannot handle stress or changes to her routine well and that her depression affects her ability to deal with people. (R. 19-20.) In comparing this list to Plaintiff's described daily activities, the ALJ found that Plaintiff's claims of disabling symptoms did not comport with the daily activities she described. (R. 20.) Despite claimed debilitating pain, the ALJ notes that she handles her own personal hygiene, watches television, reads, knits and crochets, cooks daily, lightly cleans, washes dishes, does laundry, drives, goes out alone, shops in stores, attends doctor appointments, claims to be able to walk half a mile without rest, socializes with her friend and parents, and is able to count change and handle bank accounts. (R. 20.) Many of these activities involve her claimed impairments like the use of her hands and the ability to walk or need for a cane. Because he found these symptoms to be inconsistent with her daily activities, the ALJ found Plaintiff's credibility to be weakened. (R. 20.) A reviewing court is highly deferential to an ALJ's credibility determination and will only reverse if it is 'patently wrong," meaning that it "lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413 – 14 (7th Cir. 2008). He was not "patently wrong."

**(2)** *ALJ's RFC Evidence*

Plaintiff argues that she requires: handling and fingering limitations; limitations regarding twisting and moving objects from one place to another on a table, especially while standing; and neck and head movement limitations related to rotation, flexation, and extension, which would affect sit/stand and sedentary work. Additionally, she argues that she requires home treatment two days a week, which would put her over allowed absences from work.

The ALJ did not err by not including limitations as to being home bound, hand problems, or twisting, but he did err by not discussing the evidence of neck and cervical spine limitations. "The ALJ is required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible." *Schmidt v. Astrue*, 496 F.3d 833, 846 (7th Cir. 2007). Additionally, the, "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p (S.S.A.), 1996 WL 374184, at *1 (emphasis original). The ALJ must consider limitations and restrictions caused by all of an individual's impairments, including those he has deemed to be non-severe. (*Id.* at 5.) However, he does not need to list every piece of evidence in support of his conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) ("The ALJ is not required to mention every piece of evidence but must provide an accurate and logical bridge between the evidence and the conclusion that the claimant is not disabled. . . .") (internal citations omitted).

(a) *Home Based Mental Health Services*

The ALJ did not err by not including a limitation for required, in-home medical treatment twice a week because there is no evidence in the record to support such a conclusion. The pages in the record that Plaintiff cites merely state that she is receiving home based services, along with other therapy outside the home. (R. 397.) The therapy outside the home cited here also runs

7

contrary to Plaintiff's assertion that the Court should infer limited mobility due to her in-home therapy. Additionally, the testimony of Eldia Stickney, her in-home mental health technician, indicates that the in-home therapy occurs every other week, not twice a week as Plaintiff alleges. (R. 68.) Further, the view that this in-home therapy is "required" is not supported by Ms. Stickney's testimony. When she was asked about Plaintiff's physical restrictions in relation to why she visited Plaintiff at her home, Ms. Stickney responded, "That's my job. I'm home-based," not indicating that any restriction limited Plaintiff's ability to leave her home to seek treatment. (R. 68.)

(b) *Hands*

The ALJ properly considered and weighed evidence related to handling and fingering limitations and therefore, did not err by excluding them from the RFC. While determining which impairments were severe, the ALJ noted that the consultative examiner did not find any abnormality in Plaintiff's hands. (R. 16.) Further, in explaining the RFC, he mentioned Plaintiff's claim that her lower back pain and stiffness affect her ability to use her hands (R. 19), so it cannot be said that he ignored an entire line of evidence. Finally, the ALJ found that Plaintiff's described daily activities, such as knitting and crocheting, cooking, light cleaning, dishes, laundry, driving, and shopping, are inconsistent with her alleged disabling symptoms. (R. 20.) Among those alleged symptoms is hand pain. Because the ALJ's conclusion is supported by substantial evidence, the Court will not disturb it.

(c) *Twisting*

The ALJ did not err by not including twisting limitations in the RFC. Plaintiff argues that the decreased range of motion that Dr. Ringel found in Plaintiff's hips forms a basis for limitations regarding the twisting and moving of objects from one place to another on a work table, especially while standing. (Pl.'s Opening Br. 19 – 20.) The ALJ did consider the impairment noted by Dr. Ringel when forming the RFC but ultimately decided the weight of the evidence did not support including such a limitation for this impairment. (R. 21.) In discussing Dr. Ringel's evidence, the ALJ acknowledged that he noted Plaintiff had a motor strength of 5/5 in all prioximal muscle groups in all four extremities, had her sensory intact in all four extremities, but she did have some deceased range of motion in lumbar spine and hips. (R.21.) This minimal explanation was enough to show the Court that the ALJ considered the limitation but did not deem it to have an effect on Plaintiff's RFC. Plaintiff fails to show how having, "some decreased range of motion in the lumbar spine as well as in the hips," required any additional limitation to be added to the RFC. (R. 357.)

(d) *Neck*

The ALJ did err by not discussing the evidence of neck and cervical spine limitations. There is evidence in the record to both support and to challenge such a limitation, but because the ALJ did not mention any of it, the Court cannot provide a meaningful review of whether his analysis formed the requisite evidentiary bridge to his conclusion. While the ALJ does not need to mention every piece of evidence, he cannot ignore an entire line of evidence. *Arnett v. Astrue*, 676 F.3d 586, 591 – 92 (7th Cir. 2012). Whatever the Court's opinion of this evidence may be, as a reviewing court, it cannot re-weigh evidence or substitute its judgment for that of the ALJ.

9

*See Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The Court remands this issue to the ALJ to consider.

**(3)     RFC Specificity**

Because the ALJ erred by failing to discuss evidence of neck and cervical spine limitations, the vocational expert's analysis could be tainted. This analysis must be done again, taking into account any neck or cervical spine limitations that the ALJ may find after he considers that evidence. However, the portion of the job analysis that Plaintiff challenges does not relate to the neglected evidence that requires remand, so the Court will analyze the challenged portion now.

Plaintiff argues part of the RFC limitation is too vague to permit meaningful review because the exact period of time that a job may require intense or focused attention is not enumerated. The ALJ included a limitation that Plaintiff, "cannot perform tasks requiring intense or focused attention for long periods of time." (R. 18.) Plaintiff suggests that this Court should require the time period associated with "intense and focused attention" to be enumerated in the same way that frequency is required to be when referring to RFC limitations regarding alternating between sitting and stranding. Plaintiff also contends that the types of jobs available may be different at various periods of attention that could be considered "long,", and because there is no way to know if the vocational expert and the ALJ were referring to the same period of time, this section of the RFC is too vague to permit meaningful review.

First, the argument that the period of time limitation on "intense and focused attention" should be enumerated in the same way as the frequency of a sit/stand option is unavailing. The cases Plaintiff cites only reference the particular enumeration for sit/stand. Those cases, in turn,

cite to a specific Social Security Ruling which requires that enumeration in particular. (SSR 96-9p (S.S.A.), 1996 WL 374185, at *7). To the Court's knowledge, no such specific enumeration requirement exists for period of time for intense and focused attention, and Plaintiff does not cite to any such enumeration requirement.

Further, the review at this step is of whether enough evidence supported the ALJ's finding that there were jobs that existed in sufficient numbers in the economy that Plaintiff could perform, and therefore she was not disabled. This is step 5 of the analysis; therefore, the burden is on the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). It must be clear that a vocational expert took into account all of the impairments that the ALJ recognized to "assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010). The ALJ presented all of the limitations he found to the vocational expert, and there was no indication that he was confused by the ALJ's hypotheticals. (R. 72-75.) There is no indication that the vocational expert did not understand what this limitation meant or that his assessment of jobs that required less than a standard ability to give intense or focused attention was incorrect. However, because the case is getting remanded, no further discussion on this point is necessary.

**E.    Conclusion**

Because Plaintiff succeeded on one of her claims, the Commissioner's decision is AFFIRMED in part and REMANDED in part.

SO ORDERED on July 7, 2015.

                                                 s/ Joseph S. Van Bokkelen  
                                                 JOSEPH S. VAN BOKKELEN  
                                                 UNITED STATES DISTRICT JUDGE